May it please the Court, my name is Samuel Wong. I'm an assistant United States attorney in Sacramento, California. I would like to reserve two minutes of my time for rebuttal. The essential facts in this case cause or compel the reversal of the district court. The facts are fairly straightforward. In this case, this was a Franks motion filed by the defendant, and what happened was the court below applied the wrong standard under Franks. Under Franks, a defendant must prove by a preponderance of the evidence that in the warrant affidavit, the affiant made a false statement knowingly and intentionally or with reckless disregard for the truth and the affidavit's remaining content is insufficient to establish probable cause. What the district court did instead was question whether or not it was reckless to not include information which bears directly upon resolving the dispute instead of asking whether the affiant personally acted with reckless disregard for the truth. The court questioned, if I had known these things, these are the alleged omissions, would I have signed the search warrant, and the court concluded it would not have, and then the court basically granted the motion to suppress. By using the standard that the court applied, the court essentially negated the recklessness requirement under Franks. The court implied that if not directly, excuse me, the court implied, if not that it directly held, that it's always reckless to fail to include the material information. And what that does is it really throws Franks out the window, and that is wrong. The court made no findings, nor is there any basis in the record for finding that the affiant, in this case, Sergeant Nelson, purposefully or recklessly omitted the information that the court found to be material in this case. Well, counsel, when we get right down to apparently what happened, the sergeant says, I was acting on a hunch. That's right in the record. No, the sergeant said that he absolutely believed that there was probable cause. And in this case, you have But he said he believed it because he was operating on a hunch. Isn't that right? That was in response to the court's questions. However, what the district court below ignored was the prosecutor's question to the affiant. Did you believe that you had probable cause? And the affiant said, absolutely, I believe that I had probable cause. And in this case, he had a statement from a victim sworn on the written form basically saying that he had received an armed threat from Roger Betts. The statement also explained why the victim was providing information to law enforcement piecemeal, namely that the defendant, in this case, had told the victim that his mother worked at the sheriff's department. That's a very significant fact because that information could only have come from the perpetrator in this case. Perry did not know Roger Betts before their encounter on the bridge. And when Perry learned from Roger Betts that his mother worked at the sheriff's office, that caused Perry to have a reasonable fear that law enforcement would not investigate his case thoroughly or information that he provided to law enforcement might get back to his mother and get back to Betts' mother and that Betts would then have an opportunity to hide evidence and then retaliate against Perry. So that information is very significant because it corroborates Perry's reliability in this case. Perry would not have known that Betts' mother worked at the sheriff's office without Betts telling him that information. And in this case, we also have Betts' prior arrest in 1996 for being a felon in possession of a firearm. There are cases that I cited in my reply brief, Supreme Court cases and out-of-circuit cases. And in my original brief, I cited a Ninth Circuit brief, excuse me, Ninth Circuit opinion, which says that the issuing magistrate could properly consider a defendant's or a suspect's prior arrest in determining whether there was probable cause. In fact, that kind of information is helpful. So we know that Betts had been arrested for having a gun in the past. You add that together with the information from Perry and you have probable cause. You have a citizen coming in to law enforcement and a false statement made by that citizen to law enforcement would be punishable. The Supreme Court says in Illinois v. Gates that where you have a citizen coming in and there's no information that law enforcement has to doubt the veracity of that citizen. But the citizen gave three different stories. None of the stories were necessarily inconsistent and they could be explained based on his, Perry's explanation that he was concerned about Betts' mother working for the sheriff's department. And what I want to else testify, and he was pushed to it, but he did appear to testify that he didn't know one way or the other which story was right. And that ultimately it was his gut feeling that led him to say, well, let's go find out by looking. But if under the Supreme Court test set forth in Wren, it's not the defiance subjective intent or his subjective belief that's important here. It's whether the statements in the affidavit establish probable cause based on an objective test. And I submit to you that it does. Roberts, is the police officer allowed to omit the pieces that, I mean, you're certainly right, it's not his objective, subjective intent, and he's not the person who's weighing what's on one side or the other. But if he puts in to the affidavit only what he knows is on one side and leaves out the part that's on the other, is that at least reckless in terms of not advising the judicial officer of the information that he has? Not all omissions are reckless. The Supreme Court recognized that in the Franks case, there are some omissions that are negligent. And there was no finding by the district court that Sergeant Nelson was in fact reckless. There was no basis for finding that he was reckless. The standard set forth in United States versus Sochenko, it's a Ninth Circuit case, 133F3rd at 1153, says basically there must be a finding that there's a high degree of awareness of probable falsity. I would submit in connection with an omission, there must be a high degree of awareness that the omission would lead the judge reviewing the search warrant to do the wrong thing. And in this case, there wasn't that kind of information. And even if you throw in the alleged missing information, there were four things that the The first was that Meisenheimer did not see a gun. Well, Perry didn't say that Vets brought a gun. In fact, Perry says in his written statement, he thought that Vets left the gun in the car or somewhere else that he did not bring it into the station because Perry didn't see the gun either. And the gun is about the size of your palm, smaller than your palm, three inches by four inches. Meisenheimer said that he wouldn't see the gun if Vets brought the gun in. Perry explained that he didn't tell about the gun earlier because Vets said that his mother worked at the sheriff's office. Perry did not appear to be stressed or fearful. Well, Perry was not under an immediate threat. What happened is Perry didn't think a gun was there, and Vets had given him four weeks to pay up the $3,200 before he would get a bullet in his head if he didn't pay. And the statement about Nelson's subjective intent for getting a warrant, well, Nelson said he believed that there was absolute probable cause for getting a warrant. I have a little bit of time left. I'd like to reserve that for rebuttal. Thank you. Thank you. Please, the Court. I am Tim Zendel from the Federal Defender's Office representing the appellee, Mr. Betts. I think it's fair to say we may have complicated this case somewhat in our briefs, but it's actually very simple. The sole accusation against Mr. Betts came from Jerome Perry alone, and Sergeant Nelson, when he prepared the warrant affidavit, unquestionably knew that Jerome Perry was unreliable. That's the information, the material information that he omitted from the search warrant affidavit. Now, turning to the first issue raised by the United States about the argument that the Court applied the wrong standard in determining whether Sergeant Nelson was reckless, I would just point the Court to page 278 of the excerpts of record where Mr. Long pointed to the Court, pointed out to the Court that, Your Honor, the standard is intentional or recklessness. And the Court answered, I understand. The question is whether or not it is reckless to include information that bears directly upon resolving the dispute. I think what the government doesn't recognize is the Court had crossed that bridge long ago after hearing Deputy Meisenheimer, the man who had been in the station on Friday afternoon, talk about what he had observed, what he had not observed, and what he had communicated to Sergeant Nelson over the, when he was at home on his day off. And then during the testimony of Sergeant Nelson, when the Court itself twice took over questioning and said, this is at pages 218, 219, I don't get this. You had the guy come in and say that this man's son vandalized my house. You had him come in later and say, I recant, and you had him come in after that and say, I recant my recantation, and he had a gun. Why would you believe him? Then again, later, the Court takes over the questioning and asks Sergeant Nelson, he says, he did not know because, speaking of the magistrate, he did not know because you did not tell him that you had talked to Deputy Meisenheimer, asked him specifically about the gun, and was told he didn't see any gun. Correct? Answer, yes, sir. And you did not tell him that Meisenheimer had told you that Perry never mentioned the gun when he talked to Meisenheimer. Answer from Sergeant Nelson, correct. And you didn't tell him that Meisenheimer had reported you, to you, that Perry did not appear to be in any stress at the time he signed the recantation. Correct? Answer, correct. In fact, you didn't even tell him that Mr. Perry gave Deputy Meisenheimer a third different story on the 11th, did you? Answer, again, from Sergeant Nelson, no. And I think the government's mistake here is that they've placed emphasis on the sergeant's testimony that he didn't recall or did not discuss with Deputy Meisenheimer Mr. Perry's second visit outside the presence of Mr. Betts, but that's simply belied by the record. Both Deputy Meisenheimer and Sergeant Nelson testified that they discussed the discussion with Perry, they discussed the absence of a gun, the lack of any mention of a gun. So you have four stories from Mr. Perry, all of those stories went to Sergeant Nelson before he wrote the affidavit. The one that he omits is really the most significant one bearing on his credibility. That's the story that on Friday afternoon, Mr. Perry, after Mr. Betts had departed, comes back in and says, I didn't want to do that, that guy threatened me, which at this point is the third time he's contradicted himself, or the third story that he's told, but he doesn't mention a gun. I had occasion the other day when I was with my children to tell them about the time 30-some years ago, 35 years ago, when somebody in a movie theater pulled a knife on me. That's a startling event. That's why Deputy Meisenheimer, when he testified, was asked, were you surprised? And he said, yes, I was surprised, and I would have conveyed that surprise to Sergeant Nelson. It simply doesn't happen. I know the government says, well, he had this reason for not doing it. Well, that reason came out of the hearing. That sheds no light on the affidavit. The important thing is, immediately after, he goes into the station and says, that guy threatened me, but doesn't mention a gun. That information is conveyed to Sergeant Nelson, and it's left out of the affidavit altogether. If there are no questions, I'm happy to submit the matter. I think I've covered everything. I read what the district court says at the time of the ruling, and it seems to place an awful lot of emphasis on Sergeant Nelson's evaluation or motivation. Does that play any role in this? Well, the standard is objective, and I think the government's kind of skewed it a little bit whether he believed there was probable cause. I think Mr. Wong mentioned that during his argument. The question is really an objective one. Under the circumstances, can the court infer that there was a deliberate disregard of the truth on behalf of Sergeant Nelson? And Judge Shea, I'm sure you know this from practicing every day in the district court. You always determine mental states circumstantially. So you have these factors of Sergeant Nelson doing an investigation, speaking to the one deputy, then speaking to the other deputy, but then failing to do any investigation on his own. From that, I think that's why the court is talking about the sergeant's mental state. It was a pretty aggressive questioning by the district court judge, which structured the questions in such a way that the answers that came out of the sergeant were to agree with the district court judge more often than not. And that's caused some issues here about his hunch or his gut feeling. And you're quite right. The objective standard does apply regardless, and other Supreme Court cases teach us that as long as there's an objective foundation, whether it was pretextual or subjective feelings of the officer approaching, whatever, doesn't apply. It's whether there's an objective basis. Here, however, there was some coloration because of that language, gut feeling, and it seemed to affect the way the judge viewed things. The standard is still clear error, so. Yes, and I think that Judge Carlton was unfavorably impressed by the officer's testimony that he acted on a gut feeling, but he did not become part of Judge Carlton's findings. Judge Carlton is a very experienced judge. Really, it comes down to what you think the reaction was to a gun. If he didn't express, he didn't mention a gun upon reentry on Friday p.m., then that really put his, the whole issue in doubt, and that should have been included. And had that been included, then there would have been, there wouldn't have been a sufficient basis to issue the warrant. Correct. I think it's as simple as that. Thank you. Thank you. Rebuttal. What I'd like to emphasize is that if you throw back into the affidavit the information that was allegedly recklessly omitted, you still have probable cause for the issue, and so the search warrant. It's very important to understand that this is the Pumas County Sheriff's Department. It's not the San Francisco Police Department or Sacramento Police Department. It's a very small department. Perry reasonably concluded and believed that any information he provided to the Sheriff's Department would get back to his mother, to Betz's mother, and Betz's mother would be able to interfere with the investigation. Perry explained that he only wanted to tell this information to Steve Paye, and Steve Paye was a person who had handled Perry as an informant. When did Nelson know that? When did Nelson know of this explanation by Perry of not having described or mentioned a gun earlier? I'm not sure if Nelson even knew that Meisenheimer had the second meeting with Perry. I mean, the key thing seems to be mention or failure to mention the gun at a certain time, at the earliest opportunity, and the explanation being offered for why it was Perry may have kept that back. If it's not known to Nelson, then? It was in the affidavit that Nelson said, quoting from Perry's statement, that Perry knew that Betz's mother worked in the Sheriff's Department. That's part of Perry's written statement in the affidavit. So that's something that Nelson knew, and Nelson proffered that as an explanation why Perry did not offer everything about the gun right up front. Now, the district court's ruling basically says whenever a victim holds back information about an armed threat because the perpetrator tells the victim he has a relative working for the law enforcement agency that's investigating the crime, the victim becomes unreliable, and in such cases, the warrant will not issue. Well, that's wrong. That's not right. It basically punishes the victim for holding back information based on a reasonable concern that the law enforcement investigation is going to be interfered with, and it rewards the perpetrator for making the additional threat that, hey, my mother works at the Sheriff's Department. And because it's wrong, I ask the Court to reverse the district court below. Thank you, both counsel, for the argument. The case, just argued, is submitted.
judges: B. Fletcher, Clifton, Shea